(140 App. Div. 750.)

### PEOPLE v. BROOKLYN BANK IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, Third Department. November 16, 1910.)

1. RECEIVERS (§ 203*)—RIGHT OF REVIEW—COMPENSATION TO RECEIVERS AND ATTORNEYS—RIGHT TO COMPLAIN.

A receiver of a corporation represents all the parties interested, and may appeal from the allowance to himself and co-receiver and their attorneys, and the fact that the corporation consented to the allowance is immaterial, especially where the consent is given under moral, if not legal, duress, with a view of permitting the corporation to terminate the receivership and begin business again.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 203.*]

2. RECEIVERS (§ 99*)—EMPLOYMENT OF ATTORNEYS—ALLOWANCES.

An attorney who contracts to render services for a receiver in the discharge of his trust for a specified sum may not recover from the receiver more than the sum agreed on, and where he renders additional and separate work he must look to those for whom he works for his additional compensation.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 184; Dec. Dig. § 99.*]

3. RECEIVERS (§ 198*)—COMPENSATION.

Where the two permanent receivers of a bank served only six months when the bank resumed business, and most of the work leading to the resumption of business was done by the attorneys for the bank instead of by the receivers, and the receivers had a trust fund of less than $2,000,-000, an allowance of $12,000 each for their services was sufficient.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 392–396; Dec. Dig. § 198.*]

Houghton, J., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, Ulster County.

Action by the People against the Brooklyn Bank in the City of New York, in which Charles M. Higgins and another were appointed receivers for defendant. From orders denying the application of receiver Charles M. Higgins to review the allowance made to the receivers and to their attorneys, he appeals. Reversed, and motions granted.

See, also, 125 App. Div. 354, 109 N. Y. Supp. 534.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

Charles M. Stafford, for appellant Higgins.

Philbin, Beekman & Menken, for respondent.

J. Edward Swanstrom, for receivers.

Edward R. O'Malley, Atty. Gen., for the People.

SMITH, P. J. Upon November 16, 1907, upon the application of the Attorney General, Bruyn Hasbrouck was appointed temporary receiver of the defendant bank. Proceedings were taken under the statute, and in December of that year an order was made appointing said Bruyn Hasbrouck and one Charles M. Higgins, the appellant here, as permanent receivers. Upon the appointment of Mr. Hasbrouck as temporary receiver, he employed as his attorney one Charles A. Dolson, who had just prior thereto been a Deputy Attorney General of the state. Thereafter a contract was attempted to be made between said Hasbrouck and Dolson, whereby he should become the attorney for the permanent receiver. This contract was approved by the Special Term, but upon appeal the order approving the same was reversed by this court, upon the ground that it was against public policy to allow to be appointed as attorney for the receiver one who had been associated with the Attorney General at the time the application was made for the receivership. The said Dolson, however, had already done considerable work for the receivers and was finally allowed $10,-000 as his compensation, of which no complaint is here made. Upon April 8th the said receivers entered into a contract with James C. Church and J. Edward Swanstrom to act as attorneys for the receivers for 12 months for the sum of $14,000. It was provided in said contract that, if the receivership terminated before the 12 months by resumption or otherwise, they were to take such a part of the $14,000 as would be proportionate to the part of the year through which they had acted as the attorneys. It was agreed, however, that if the receivership was closed within the year the receivers would recommend to the court that these attorneys be allowed the full sum of $14,000 for their services. Thereafter in June of 1908 arrangements were made for the payment of all depositors and the resumption of business by the bank. An application to be allowed to resume was made before the Special Term upon the 16th day of June. Upon said application Messrs. Church and Swanstrom appeared as attorneys for the receivers, but the receiver Higgins was not personally present. The receivers' attorney here, Charles M. Stafford, was present, but claims that he was present as representing some of the depositors and not representing Mr. Higgins personally. That proceeding resulted in an

order authorizing the bank to resume and taking the statement of the bank superintendent of the financial affairs of the bank as the accounts of the receivers, and said accounts as such were assumed to be settled. Allowance was made of $4,000 to the temporary receiver and $19,000 to each of the permanent receivers, and an allowance of $20,-000 was made to Church and Swanstrom, the attorneys for the receivers; they having had theretofore received the sum of $2,000 under their contract. In this order it was further provided that the assets should be turned over by the receiver to the bank, and the receivers should file affidavits of their disbursements, which should be attached to the papers upon which the motion was made nunc pro tunc, which was a part of the report which was there assumed to be settled; and it was further provided:

"That any party in interest may apply to this court at the foot of this order for such other and further relief as may be necessary to carry into effect the purposes and provisions of this order as hereinbefore recited."

In pursuance of this order, the assets were handed over by the receivers of the Brooklyn Bank, and the allowances therein made were by them paid. In December of 1908 both receivers filed an affidavit of their disbursements as required by the order of June 16th. The receiver Higgins thereupon made application to the court to review his own account, alleging that the payments to the receivers were both illegal and excessive, and reciting the contract made with the attorneys, and charging that the allowance to them was illegal, as being in excess of the sum lawfully due to them under their contract. Before the hearing of the motion, the receiver Higgins made another application for an order to show cause why the accounts of his co-receiver should not be reviewed, basing this application upon the papers upon which the other application was made, as well as upon other papers. While the last application was in form for an order to show cause, which is clearly unauthorized practice, a request was also made for such other order or relief to which the court might deem the moving party entitled. Upon the application of June 16th the Attorney General is recited as appearing and not opposing. Upon the applications in December the receiver Hasbrouck appeared by counsel; Church and Swanstrom appeared personally. The applications resulted in two orders; one of them denying the motion for a review and approving the accounts as rendered, and the other denying the motion for an order to show cause. From these two orders this appeal is taken.

The first question for consideration arises upon the application to dismiss this appeal. It appears that Philbin, Beekman & Menken appeared as attorneys for the Brooklyn Bank at the time the order of June 16th was made, and consented to the making of the allowances. While the Attorney General appeared and did not oppose, the Attorney General appears upon this appeal and states that he considers the allowances too large, and that they should be reduced if the legal right so to do be found. It is insisted by the receiver Hasbrouck and by the attorneys whose allowances are challenged that the stockholders of the Brooklyn Bank alone have the right to question these al-

lowances, and that it does not lie with the receiver. In the case of the Knickerbocker Trust Co., 127 App. Div. 215, 111 N. Y. Supp. 2, the attorneys for all parties, except the Attorney General, had consented to certain allowances; the depositors were to be paid in full, so that the general creditors were not interested. It might as well have been argued that the stockholders of the trust company alone could object, and that the Attorney General had no right to make the application. But the allowances were there reduced. Moreover, the receiver represents all parties interested in the fund. The consent of the attorneys of the Brooklyn Bank was given under such circumstances that if such consent had been refused the plan of resumption would have been imperiled. Without imputation upon the good faith either of the receivers or the attorneys for the receivers, a consent thus given should be held to be given under moral, if not legal, duress, and should not be held to estop the receiver in his effort to protect the interests which he is bound to protect under his trust. The motion, therefore, to dismiss the appeal, should be denied.

The second question which arises is the allowance to the attorneys Church and Swanstrom. It will be remembered that attorney Dolson had done the work for the trust from November until April, and had been paid $10,000 therefor. The work for which these attorneys have received this allowance was done from April 8th until June 16th, a little over two months. It is claimed by one of the attorneys that there was still some unfinished business left, which they were to transact without compensation. This claim, however, cannot be considered in the absence of a specific disclosure of the extent of these services and of their value. It is further claimed that these attorneys might have delayed this resumption scheme, but that they co-operated for the purpose of bringing about the result, and that their services in this co-operation were separate and apart from their retainer. An extra compensation beyond that secured under their contract right could hardly be justified upon the ground that the attorneys co-operated cordially in the resumption scheme instead of obstructing it, so as to prolong the receivership and increase their fee. Nor can the allowance be justified on the ground of any additional work involved in assisting the plan of resumption. If such work be a part of their legitimate work and under their contract, then they are paid for it by the contract agreement. If the work be additional and separate therefrom, they must look to those for whom they worked for their additional compensation. The court cannot be too scrupulous in holding attorneys to a faithful performance of their agreements. They are usually fully competent to make agreements not unprofitable to themselves, and the allowance by the court of $8,000 in excess of the most liberal contract price that can be claimed can only result in bringing discredit both upon the court and upon the attorneys. The allowance to the attorneys therefore should not exceed $12,000, in addition to the sum of $2,000 which they have received, which is the sum to which they are lawfully entitled.

The third question arises as to the allowance to the receivers. We do not agree with the claim of the appellant that the amount was in excess of what might lawfully be allowed. We are clearly of opinion,

however, that the amount allowed was excessive.  We are not disposed to question the allowance of $4,000 to Hasbrouck as temporary receiver.  The permanent receivers were appointed in December, 1907, and turned over all their assets in June, 1908.  From the papers it would appear that most of the work leading to the resumption of business was done by the attorneys for the bank rather than by the receivers.  In the Knickerbocker Trust Company Case the receivers were allowed $20,000 for five months' time, where the assets involved amounted to $130,000,000.  Here, if we assume that all of the assets held by the International Trust Company came into their hands, the amount of the trust fund would be less than $2,000,000.  For six months' services as such receivers we think the sum of $12,000 each would be ample and generous compensation.

The orders should, therefore, be reversed, and motions granted; the relief given upon the motions to be in accordance with this opinion.

Orders reversed, with $10 costs and disbursements, and the motions granted in accordance with opinion.  All concur, except HOUGHTON, J., who writes for a dismissal of the appeal.

HOUGHTON, J. (dissenting).  I think the appeal should be dismissed on the ground that the appellant is not an aggrieved party within the meaning of section 1294 of the Code of Civil Procedure.

The decree of June 16, 1908, clearly is sufficient to relieve the appellant as receiver from any official liability and to discharge his sureties.  Very likely, in the stress of the desire of the bank to resume business, it was liberal in the matter of fees and allowances, and very probably they are too large.  If the appellant's conscience troubles him for accepting too large fees, he can, as he has, restore, a portion to the bank; but he has no standing to intercede as champion for the bank and to seek to compel others who received fees and allowances to restore when the bank and its creditors and stockholders do not complain.  It is no affair of his, after he and his co-receiver have been discharged and his duties ended, that some wrong has been done, fancied or real, to the bank and its stockholders.  When the decree was entered and he was discharged, his duties ceased.

The situation is wholly different from that existing in People v. Knickerbocker Trust Company, 127 App. Div. 217, 111 N. Y. Supp. 2.  In that case the Attorney General had protested against the allowances.  He represented the people, plaintiff in the action, and it was his duty as Attorney General to supervise the allowances and to appeal if he felt that the people were aggrieved.  In the present case the appellant through his attorneys moved for the decree which he now seeks to overthrow.  The Attorney General was represented and in court when the decree was made and specifically announced that he did not oppose.  Even if the Attorney General by such attitude attained such standing as would permit him to appeal, he does not do so, and the appellant is not in a position to appeal for him.

That appellant has no standing as an aggrieved party to appeal from the original decree is manifest from the rules enunciated in Isham v. New York Association, 177 N. Y. 218, 69 N. E. 367; Matter of Hodgman, 140 N. Y. 421, 35 N. E. 660; Bryant v. Thompson, 128 N. Y.

426, 28 N. E. 522, 13 L. R. A. 745; and Matter of Richmond, 63 App. Div. 488, 71 N. Y. Supp. 795. If he had no standing to appeal from that decree, he has no standing to move to open it. If he was not aggrieved by the decree so that he could appeal from it, he is not aggrieved by it in such a way as to permit him to move to open it and appeal from the order refusing so to do.

The decree was made on his motion through his attorneys. He did not show in his moving papers any mistake or fraud which violated his rights. On the motion to open he cannot say that some party who announces himself content with the decree was imposed upon or defrauded. It is only the party imposed upon or defrauded by a judgment or order of a court that can move to have the wrong set right. A party who has not suffered by imposition or fraud has no standing to champion a cause of some other party whom he imagines to have been injured, but who repudiates the charge and announces himself satisfied.

Whether, therefore, the court was imposed upon in making the allowances, or whether they were improperly made, is unimportant to the appellant; and his appeal should be dismissed.